IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MILIQUE WAGNER, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | CIVIL ACTION NO. 25-CV-1450 |
| | : | |
| CITY OF PHILADELPHIA, *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

**HENRY, J.**                                                            **MARCH 20, 2026**

Plaintiff Milique Wagner[1] filed a *pro se* civil rights complaint pursuant to 42 U.S.C. §

1983, naming as Defendants the City of Philadelphia ("the City"), Detective Philip Nordo,

Detective Gary White, Detective Timothy Scally, Police Officer Justin Rios, Police Officer

William Golphin, and Police Officer Daniel Stevens.  (ECF No. 2 at 4-5.)  Wagner filed a motion

to proceed *in forma pauperis* (ECF Nos. 1 and 3), which the Court previously granted (ECF No.

5).[2]  Presently before the Court is a Motion to Dismiss the Complaint filed by Defendants Scally,

Rios, and the City (ECF No. 13), along with Wagner's responses to the Motion (ECF Nos. 20

and 37).  The Court will also screen the Complaint as to the unserved Defendants, White,

---

[1] At the time he filed this civil action, Wagner was incarcerated at SCI Phoenix.  (*See* ECF No. 2 at 3.).  He recently notified the Clerk of an address change apparently indicating he has been released from prison.  (*See* ECF No. 40.)  VINE, an online source providing custody status, confirms that Wagner has been released and is on parole. *See* https://vinelink.vineapps.com/search/PA/Person (last checked March 13, 2026).

[2] Wagner also filed a Motion to Appoint Counsel (ECF No. 6) and the Court had referred the matter to the Prisoner Civil Rights Panel for the Eastern District of Pennsylvania.  (*See* ECF No. 5.)  No attorney volunteered to accept the case.  As Wagner was previously advised, he has no legal right to an attorney in this civil action. *See id*.  The Motion to Appoint Counsel will be denied.

Golphin, and Stevens pursuant to its screening authority under 28 U.S.C. § 1915(e)(2)(B).  For

the following reasons, the Court will grant the Motion to Dismiss in part, deny it in part, and

afford Wagner an opportunity to amend certain claims.  The claims alleged against White,

Golphin, and Stevens will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to

state a claim.

## I.    FACTUAL ALLEGATIONS AND RELEVANT PROCEDURAL BACKGROUND[3]

### A.    Alleged Facts

On February 11, 2010, a Philadelphia police officer and his partner responded to a call

concerning a shooting in the 2500 block of Cecil B. Monroe Avenue.  (Compl. at 8.)  Upon

arrival, a crowd directed them to 26th Street, where they discovered victim Braheem King, also

known as Braheem Young, bleeding from injuries to his upper torso.  (*Id.*)  King died, and the

death was ultimately ruled a homicide.  (*Id.*)  Defendants Stevens and Rios also received the

dispatch about gunshots fired in the 2500 block of Cecil B. Monroe Avenue.  (*Id.*)  As they

approached that area in a marked patrol car, they were informed that two Black males wearing

dark colored hoodies had been seen running southbound on 26th Street from Cecil B. Moore

Avenue.  (*Id.*)  Stevens observed Wagner and another Black male, both wearing hoodies, jogging

on 24th Street.  (*Id.*)  Rios yelled, "Stop, [P]olice," and Wagner stopped and placed his hands in

the air.  (*Id.*)  Stevens patted Wagner down, handcuffed him, and took him to the homicide unit

of the Philadelphia Police Department for investigation.  (*Id.*)  Wagner alleges that Defendant

---

[3] The factual allegations set forth in this Memorandum are taken from Wagner's form
Complaint and attachments.  (ECF No. 2.)  The Court deems the entire submission to constitute
the Complaint ("Compl.") and adopts the pagination supplied by the CM/ECF docketing system.
Where needed, grammar, spelling, and punctuation in quotes from Wagner's pleadings will be
corrected for clarity.  Publicly available records have also been consulted in this screening under
§ 1915(e)(2)(B).  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Nordo interrogated him, and that, during the interview, Nordo "sexually harassed" Wagner and "tried to solicit [him] to engage in 'Gay Porn'." (*Id*.) Police released Wagner later that evening. (*Id*.)

On February 20, 2010, Nordo and Scally interviewed witness James Herman Adams at the homicide unit. (*Id*. at 8-9.) According to Wagner's Complaint, Nordo and Scally allegedly "[u]sed coercive methods [when interviewing Adams] and fabricated the signatures on the photo of Mr. Wagner." (*Id*. at 9.) Adams later testified that Nordo paid him $20.00 to testify against Wagner. (*Id*.)

Nordo and Scally also interviewed Amin Payne the same day. (*Id*.) Wagner claims that they "fabricated and coerced Payne's statement" at the interview. (*Id*.) At trial, Payne was the primary witness against Wagner and testified that Wagner shot the victim. (*Id*.) Payne also testified to the threats police made against him during their interview. (*Id*.) Wagner asserts that at some point "it was [ ] revealed that those detectives ha[d] a history of [e]ngaging in a pattern and practice of coercing and fabricating statement[s] through the use of force, duress, bribery, and other illegal, coercive methods." (*Id*.)

Police re-arrested Wagner on September 30, 2010, and charged him with murder and related offenses. (*Id*.) While in custody, Nordo interviewed Wagner and again allegedly sexually harassed him and solicited his participation in "Gay Porn." (*Id*. at 9.) Wagner and his co-defendant, Kelvin Bryant, were tried by a jury in 2013 and found guilty of first-degree murder plus related offenses. *Pennsylvania v. Wagner*, No. 2258 EDA 2017, 2018 WL 6617359, at *1 (Pa. Super. Ct. Dec. 18, 2018). Wagner was sentenced to life imprisonment on February 6,

2013.[4] *Id.* His direct appeal and first petition under Pennsylvania's Post Conviction Relief Act (PCRA) were unsuccessful.[5] *Id.*

Wagner learned in August 2018 that Nordo had been accused of misconduct in other cases through newspaper articles, and he filed a new PCRA petition in March 2019 containing allegations of misconduct by Nordo and others in his own interviews and the prosecution of his case. (*Id.* at 9-10.) On March 23, 2022, the Philadelphia District Attorney's Office Conviction Integrity Unit ("CIU") provided Wagner with a *Brady* notice disclosing emails, notes of testimony, and Payne's neuropsychological evaluation and social history report. (*Id.* at 11.)

---

[4] Wagner, Bryant, and a third co-defendant, Fields, were tried together for two related murders—King's murder for which Bryant and Wagner were charged, and another victim's murder, for which Bryant and Fields were charged. *Pennsylvania v. Fields*, No. 1522 EDA 2013, 2015 WL 7572570, at *1 (Pa. Super. Ct. Feb. 6, 2015). All three were convicted of first-degree murder and related offenses. *Id.* at *1 & n.1.

At trial, Payne was the only testifying eyewitness to King's murder. *See Wagner*, 2018 WL 6617359, at *3. He testified that, on the evening of the murder, Wagner, Payne, Bryant, Bryant's mother, and her boyfriend—James Herman Adams—were present at Bryant's mother's apartment. *Id.* at *1. Payne stated that Bryant received a phone call, and Bryant and Wagner left the apartment. *Id.* Payne claimed to have followed them outside shortly after. *Id.* Payne testified that he saw Wagner and Bryant speak with the victim and then shoot him. *Id.*

James Herman Adams testified at trial about the group assembled at the apartment and that he heard gunshots about ten minutes after Bryant and Wagner left. *Fields*, 2015 WL 7572570, at *1. Adams testified that, while he and Payne were at the Homicide Division on February 20, 2010, being interviewed, police "opened the door and showed me Amin." *Pennsylvania v. Bryant*, No. 1883 EDA 2016, 2017 WL 4274019, at *5 (Pa. Super. Ct. Sept. 19, 2017). Adams later heard rumors that there was "a hit out" on him. *Id.* Payne shot Adams just over a month after they both were interviewed on February 20 at the police station. *Wagner*, 2018 WL 6617359, at *1 n.1. Payne was convicted of robbery and aggravated assault for Adams's shooting after a trial in November 2011. *Pennsylvania v. Payne*, No. 3264 EDA 2011, 2013 WL 11253336, at *1 (Pa. Super. Ct. Oct. 8, 2013).

[5] A panel of the Pennsylvania Superior Court affirmed the conviction and sentence and the Pennsylvania Supreme Court denied further review. *See Pennsylvania v. Wagner*, 118 A.3d 457 (Pa. Super. Ct. Jan. 29, 2015) (unpublished memorandum), *appeal denied*, 126 A.3d 1285 (Pa. 2015)). Wagner's first PCRA petition was denied on June 16, 2017. *See Commonwealth v. Wagner*, CP-51-CR-0000127-2011 (C.P. Philadelphia).

Specifically, the CIU uncovered the following evidence that was previously withheld, according to Wagner:

> Amin Payne's neuropsychological evaluation reflecting that Payne's full scale IQ was 6.1[], placing him in the 0.5 percentile or extremely low range [of] intellectual functioning. The evaluation described Payne as presenting a classic picture of mental retardation. According to the social history report, Payne has been in and out of treatment for bipolar disorder, ADHD, and his behavior has displayed an unconfirmed diagnosis of schizophrenia for most of his life. He was first committed to a psychiatric hospital at age 10. At Payne's sentencing hearing, a mitigation specialist described how Payne's low intellectual functioning affected him: [h]is IQ affects him in his everyday life. He can't remember what he ate for breakfast the day before. He doesn't know simple things, such as how to count or make exchange [*sic*]. It was concluded that he will never be able to function on his own.
> . . .
> The Commonwealth withheld . . . an internal email sent by a[n] Assistant District Attorney in connection with Payne's prosecution in the James Herman Adams shooting. On December 17, 2010, an ADA sent an email in which he noted that James Adams allegedly stated that Amin Payne was also one of the shooters in connection with the homicide of Braheem King; and the ADA believes that this was the motive for the shooting in that case. In another internal document dated May 1, 2010, an Assistant District Attorney noted, homicide thinks Amin Payne was actually involved in the Braheem King shooting, too; so does our Commonwealth. And he (ADA) thinks that's why Amin Payne shot him.

(*Id*. at 10-11.)  Wagner further alleges that "[t]he Commonwealth withheld exculpatory evidence from [him] revealing the egregious misconduct of Detective Nordo; in which he engaged in a pattern and practice of coercing and fabricating statement(s) through the use of force, duress, bribery, an[d] other illegal coercive methods." (*Id*. at 10.)

Wagner's conviction and sentence were vacated in 2023 on collateral review due to what is characterized by Wagner as "egregious misconduct of the defendants." (*Id.* at 10.)  *See also Wagner*, CP-51-CR-0000127-2011.  He pleaded guilty to third-degree murder, conspiracy,

possession of an instrument of crime, and was sentenced on May 2, 2023, to 14 to 28 years in prison, with credit for time served. (*See* PCRA Hrg. Tr. vol. 1, 20-21, May 2, 2023 (attached to Moving Defendants' Motion to Dismiss as Ex. 13-1)).)

**B.       Relevant Procedural History**

Wagner's civil complaint pursuant to 42 U.S.C. § 1983 was received by the Clerk on March 17, 2025. (Compl. at 1.) Wagner alleges violations of his rights under the U.S. Constitution and Pennsylvania state law by Defendants Nordo, White, Scally, Rios, Golphin, Stevens, and the City. (*Id*. at 11-12.) He asserts five counts against the police detectives and officers in their official capacities: (1) Fabrication of Evidence; (2) Coercion of Witnesses; (3) Deliberate Suppression of *Brady* Evidence; (5) Malicious Prosecution under Pennsylvania Law; and (6) Cruel and Unusual Punishment. (*Id*.) Count (4) asserts a claim of Municipal Liability against the City. (*Id.* at 12.) On March 25, 2025, the Court granted Wagner's motion to proceed *in forma pauperis* and the case proceeded to service.

Wagner sought to serve all seven defendants with process by the United States Marshal Service. The U.S. Marshal successfully served City, Rios, and Scally in May 2025; Nordo was served in September 2025.[6] The Marshal returned the summonses for White, Golphin, and Stevens unserved, noting that additional information was necessary because the Defendants possibly no longer worked for the City and their names did not appear on the City's roster of employees. (ECF No. 11.) The Court then directed Wagner to provide new addresses for the Defendants. (ECF No. 12.) After Wagner did not return the new USM 285 Forms for the Defendants within the time directed plus a grace period, the Court issued an order for Wagner to show cause why the case should not be dismissed as to those Defendants. (ECF Nos. 26.)

---

[6] Nordo has not yet responded to the Complaint.

Wagner responded that he could not obtain their addresses or whereabouts due to the Fraternal Order of Police Collective Bargaining Agreement.  (ECF No. 32.)  Wagner asserted that all three Defendants were employed by the police department at the time of the investigation and prosecution, and that "[d]iscovery will show what actually occurred and what role each defendant played in the violations suffered by Plaintiff."  (ECF No. 32 at 1-2.)

The City, Rios, and Scally ("the Moving Defendants") filed a Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6).  (ECF No. 13).  They argue *first*, that Wagner's Counts (1)-(3), (5), and (6) should be dismissed as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); and *second*, that Wagner has failed to state a claim upon which relief may be granted as to: (a) claims against Rios because no personal involvement is alleged; (b) the *Brady* "suppressed evidence" claim; (c) the municipal liability claim; and (d) the Eighth Amendment cruel and unusual punishment claim.  (*See generally* Motion to Dismiss (ECF No. 13).)  Wagner filed Responses opposing dismissal of his Complaint.[7]  (See ECF Nos. 20, 37).

---

[7] After the Court ordered Wagner to respond to the Motion to Dismiss, Wagner filed a Response in which he asserted that he had not received a copy of the Motion, while also making generalized statements that Scally and Rios violated his due process rights and arguing against dismissal as sought by the Moving Defendants.  (*See* ECF No. 20.)  The Moving Defendants responded with a letter confirming they had originally mailed a copy of the Motion to Wagner at his SCI Phoenix address, and that they mailed a second copy to the same address upon receipt of Wagner's Response (ECF No. 20).  (*See* ECF No. 21.)  However, the Moving Defendants sent both copies directly to the state facility and not to the Pennsylvania Department of Correction's prisoner mail contractor, Smart Communications, which does not appear to have complied with DOC's mail policy, DC-ADM 803.  The policy states that "[a]ll incoming, non-privileged inmate correspondence must be addressed and sent to the Department's contracted central incoming inmate mail processing center."  The DOC's website clarifies that attorneys who are not representing an inmate, such as counsel for the Defendants in this case, must send documents to the inmate via Smart Communications.  *See* https://www.cor.pa.gov/Pages/Mail.aspx (last visited Mar. 17, 2026).  In any event, on June 24, 2025, the Court issued an Order directing the Clerk of Court to send Wagner a copy of the Motion, and enlarged the time for Wagner to respond.  (ECF No. 22.)  According to the Court's docket, that mailing was not returned to the Court.  After Wagner failed to file a timely response, the Court ordered him to show cause why his claims should not be dismissed for failure to respond to the Motion.  (ECF No. 36.)  Wagner responded

## II.   STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Peters v. Brown,* 793 F. App'x 118, 123 (3d Cir. 2019) (*per curiam*) (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (internal quotations omitted).  In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).

To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . .

---

that he wanted his prior response at ECF No. 20 to be construed as his Response to the Motion to Dismiss.  (ECF No. 37.)

claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up) (*abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024)). Because Wagner is proceeding *pro se*, the Court construes his allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245).

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)*; see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (same). The Court may also take judicial notice of prior court proceedings. *See Orabi v. Att'y Gen.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) ("We may take judicial notice of the contents of another Court's docket.") (collecting cases). "When presenting a Rule 12(b)(6) motion, the defendant bears the burden to show that the plaintiff has not stated a claim." *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

Additionally, since Wagner is proceeding *in forma pauperis*, the Court may independently screen and dismiss the Complaint "at any time" pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) if, among other things, it fails to state a claim against a defendant. *Brown v. Sage*, 941 F.3d 655, 662 (3d Cir. 2019) (en banc) ("To repeat, the statute requires a court to dismiss an IFP complaint 'at any time' if it determines that the complaint is frivolous, malicious, or fails to state a claim."). The standard of review under this screening provision is the same standard that governs a dismissal under Rule 12(b)(6). *See Tourscher*, 184 F.3d at 240. This

provision provides the Court with an independent basis for assessing the basis for Wagner's claims against the unserved Defendants White, Golphin, and Stevens.

## III. DISCUSSION

Wagner brings his claims pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court.[8] "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

### A. Official Capacity Claims Against Scally, Rios, White, Golphin, and Stevens

Wagner states that he is suing Defendants Scally, Rios, White, Golphin, and Stevens for damages in their official capacities as police officers employed by the City at the time of the alleged events. (*See* Compl. at 4-5.) Claims against the Defendants in their official capacities are indistinguishable from the claims against the City, the governmental entity who employs or employed them. *See Kentucky v. Graham,* 473 U.S. 159, 165-166 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Because claims against these defendants in their official capacities are duplicative of the claims against the City, they will be dismissed with prejudice.

---

[8] Wagner's sole claim under state law is a claim for malicious prosecution. (Compl. at 12.) Because the Court liberally construes it also as a federal claim that has nearly identical provisions, the Court will discuss both claims together.

Nevertheless, because Wagner may not have understood the implication of suing these Defendants only in their official capacity, the Court will liberally construe the Complaint to assert claims against those Defendants in their individual capacities.  *See Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("To determine whether a plaintiff sued state officials in their official capacity, we first look to the complaints and the course of proceedings." (quotations omitted)); *Coward v. City of Philadelphia*, No. 21-1619, 2021 WL 4169422, at *3 (E.D. Pa. Sept. 13, 2021) (permitting claim against defendant in his individual capacity to proceed event though "[plaintiff] did not check the box indicating a desire to sue [that defendant] in his individual capacity" where the allegations clearly sought relief based on the defendant's conduct).

### B.        Application of *Heck v. Humphrey*

The City argues that all of Wagner's claims except for the *Monell* claim in Count 4 are barred by the favorable termination rule as articulated in *Heck v. Humphrey*.  Under that rule, "to recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck*, 512 U.S. at 486-87 (footnote and citation omitted).  "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id*. at 487.  The Moving Defendants argue that Wagner's

11

constitutional claims "necessarily imply" not only the invalidity of Wagner's first-degree murder conviction, but the invalidity of the subsequent third-degree conviction for King's murder, which has not been reversed, expunged, or invalidated.  (*Id.* at 5-8.)

### 1.    The Due Process Claims in Counts 1, 2, and 3 Are Not *Heck* Barred

The so-called "two-conviction" issue as presented here has not yet been decided by the United States Supreme Court or in the United States Court of Appeals for the Third Circuit. *Gaskins v. City of Philadelphia*, 806 F. Supp. 3d 507, 517 (E.D. Pa. 2025) (noting cases currently pending where the Third Circuit may "engage this issue directly in the near term").  Other federal courts of appeals that have addressed the issue have concluded that, unlike malicious prosecution claims, certain due process claims related to a plaintiff's invalidated first conviction are not barred by the favorable termination rule in *Heck*, despite a subsequent conviction or plea of guilt based upon the same conduct.  *See Poventud v. City of New York*, 750 F.3d 121, 134-35 (2d Cir. 2014) (en banc) (holding that a *Brady* claim pertaining to first conviction was not *Heck*-barred despite plaintiff's guilty plea to lesser offense); *Jackson v. Barnes*, 749 F.3d 755, 760 (9th Cir. 2014) (holding that, in a two-conviction case, the *Heck* bar was inapplicable to a § 1983 claim based on *Miranda* violation in first prosecution); *Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000) (concluding that a *Brady* claim accrued when the affected conviction was vacated because a potential subsequent trial necessarily would not have impacted the constitutional violations at issue).

In *Poventud*, the United States Court of Appeals for the Second Circuit held that, distinct from a malicious prosecution claim, a due process claim based on a *Brady* violation does not depend on "factual innocence, but rather what would have been proven absent the violation." *Poventud*, 750 F.3d at 134.  Because the presence of a constitutional violation "need not be at

odds with his guilt," the remedy for any *Brady* claim is ordinarily a new trial in which the material is now available. *Id*. at 133 ("While *Brady* ensures a fair trial, a defendant's right to pre-trial disclosure under *Brady* is not conditioned on his ability to demonstrate that he *would* or even *probably would* prevail at trial if the evidence were disclosed, much less that he is in fact innocent." (cleaned up)).

Many district courts in this Circuit have followed the *Poventud* line of analysis, and ruled that *Brady*, fabrication of evidence, coercion, and deliberate deception claims raised under §1983 to challenge proceedings that secured an overturned first conviction do not necessarily imply the invalidity of a second conviction that is based upon the same conduct. *See, e.g., Dennis v. City of Philadelphia*, 379 F. Supp. 3d 420, 430 (E.D. Pa. 2019) (denying motion to dismiss deliberate deception and fabrication of evidence claims arising from prosecution resulting in first conviction that was vacated, despite subsequent plea of no contest to third degree murder), *aff'd in part, appeal dismissed in part,* 19 F.4th 279 (3d Cir. 2021) (declining to rule on *Heck* issue); *Gladden v. City of Philadelphia*, No. 21-4986, 2022 WL 605445, at *6 (E.D. Pa. Feb. 28, 2022) (denying motion to dismiss arguing that fabrication of evidence and deliberate deception claims were barred by *Heck* when plaintiff pleaded no contest to third-degree murder after vacated conviction); *Carson v. City of Philadelphia*, No. 23-2661, 2024 WL 3792223, at *4 (E.D. Pa. Aug. 13, 2024) (denying motion to dismiss fabrication of evidence and withholding of impeachment/exculpatory evidence claims because they did not imply invalidity of second conviction); *Natividad v. Raley*, No. 22-5061, 2025 WL 1550740, at *5 (E.D. Pa. May 30, 2025) (rejecting argument that claims of fabricating evidence and deliberate deception were *Heck*-barred where plaintiff pleaded to third-degree murder, an offense "with essentially the same elements and supported by the same facts offered at his first-degree trial"); *White v. City of*

*Philadelphia*, No. 23-4538, 2025 WL 3706949, at *4 (E.D. Pa. Dec. 22, 2025) (holding that

coercion, fabricated evidence, and withholding of *Brady* material claims were not *Heck*-barred);

*Maldonado v. City of Philadelphia*, No. 22-3474, 2023 WL 4685967, at *7 (E.D. Pa. Jul. 21,

2023) (declining to dismiss fabrication of evidence claim on *Heck* ground because compliant

raised plausible inference that faulty evidence was not "foundational to his second conviction");

*Bey v. Hediger*, No. 24-702, 2025 WL 2636424, at *5-7 (W.D. Pa. Sept. 12, 2025) (rejecting

argument that destruction of evidence, fabrication of evidence, *Brady*, and coercion claims were

*Heck*-barred after subsequent plea to third-degree murder which was "based upon the same

underlying conduct" as the preceding invalidated conviction).  Thus, when considering whether §

1983 claims would be barred in the two-conviction context, courts generally employ a modified

*Heck* inquiry, asking "what is the effect, if any, of the particular § 1983 action on the first

conviction as well as the second conviction?" and, has "the conviction that would be undermined

[ ] been invalidated." *Dennis*, 379 F. Supp. 3d at 429.

The Moving Defendants acknowledge that this Court's decisions have closely followed

the *Poventud* line of analysis in cases involving such due process claims, but they nonetheless

argue that Wagner's claims for fabricated evidence (Count 1), coerced witnesses (Count 2), and

improperly withheld evidence (Count 3) are *Heck*-barred.  (*Id*. at 7.)  Wagner's case is different,

they contend, because Wagner "now challenges Amin Payne's testimony" and his plea "clearly

rests on facts that assume the veracity of Mr. Payne's statements to officers."[9]  (ECF No. 13 at

---

[9] Although the Defendants argue generally that all of Wagner's due process claims are *Heck*-barred, (ECF No. 13 at 7), they only challenge the factual allegation that police coerced and fabricated Payne's 2010 statement, (*id*. at 7-8).  For the purposes of this motion, they do not appear to challenge on *Heck* grounds the other due process claims based on Wagner's additional factual allegations with respect to Payne, including allegedly withheld psychological reports and internal Commonwealth documents (Compl. at 10-11), as well as contentions that Nordo and Scally used coercive methods during Adams' interview (*id*. at 9), fabricated signatures on

14

8.)  They reference Wagner's May 2023 plea colloquy when he entered his guilty plea to third-degree murder.  The prosecutor offered the following facts:

> Your Honor, on February 11, 2010, Braheem King was shot multiple times on the 2500 block of Cecil B. Moore in Philadelphia.   He was transported to Hahnemann Hospital where he was pronounced.  The Officer of the Medical Examiner later determined the manner of death was homicide.
>
> On that date Philadelphia Police Officers Stevens and Rios received radio information for gunshots and that two black males wearing dark-colored hoodies were seen running southbound on 26th from Cecil B. Moore.
>
> The officers responded and spotted Wagner and another man, both wearing hoodies, in a 'slight jog' on 24th Street which is three blocks away.  Officer Rios ordered the men to stop.  Wagner was stopped by police while his accomplice fled.  On that date there was an extremely heavy snow storm and a firearm was not recovered.
>
> Prior to the shooting, Mr. Wagner and Calvin Bryant were inside an apartment where they were carrying firearms while an individual named Amin Haine [*sic*] was packaging burn bags to be sold as fake narcotics.
>
> Bryant received a telephone call and left the apartment with Wagner.  Both Wagner and Bryant approached Braheem King and both Wagner and King shot King.  They did so with malice.  On the night of the murder Wagner was released pending further investigation.  He fled to Wilkes Barre where he was ultimately apprehended.

(ECF No. 13-1 at 5-6 (PCRA Tr. vol. 1, 16-17, May 2, 2023).)  The Judge asked Wagner if the facts were "substantially correct," and Wagner answered, "Yes, Your Honor."  (*Id.* at 6.)

In this two-conviction context, the relevant question is whether Wagner's "claim concerning the fairness of the first trial necessarily implies the invalidity of the second conviction . . . ."  *Natividad*, 2025 WL 1550740, at *5 (noting that "the relevant question is not whether there is any overlap in the elements or facts required for both convictions.")  The

---

Wagner's photo (*id.*); and withheld evidence of the "egregious misconduct" by Nordo in other cases (*id*. at 10).

15

Moving Defendants focus on Wagner's factual allegation that Nordo and Scally allegedly coerced and fabricated Payne's 2010 interview and argue it is an attempt to summarily undermine the entire substance of Payne's testimony.  (ECF No. 13 at 8).  In other words, they consider that factual allegation to support solely a malicious prosecution claim, to the exclusion of the due process claim of coercion and fabrication that Wagner also raises.  (Compl. at 11-12).  But *Poventud* recognized a clear distinction between these species of claims.  *See Poventud*, 750 F.3d at 134 (vacating district court's *Heck* dismissal of *Brady* claim alleging that prosecution withheld alibi evidence in original proceedings where plaintiff later pleaded guilty to a lesser charge, because district court erroneously "treated [the claim] as though it were a malicious prosecution claim"); *Maldonado,* 2023 WL 4685967, at *7 ("The City unpersuasively tries to frame [the plaintiff's] claim as one rooted in actual innocence, compared to the 'procedural harms' in *Jackson* and *Poventud*.").  At the Rule 12(b) motions stage, the Court must accept well-pleaded factual allegations in the Complaint at their face value.  Wagner's allegation that police coerced and fabricated Payne's interview statement does not automatically conflict with the statement in the plea agreement that "[b]oth Wagner and Bryant approached Braheem King and both Wagner and Bryant shot King." (ECF No. 13-1 at 6.)  Considered against the alleged facts Wagner presents to support his theory that Payne was more than a bystander and that police knew it, neither the facts nor his theory contradict the statement confirming Wagner's own involvement in the guilty plea.[10]  *See Natividad*, 2025 WL 1550740, at *5.  A fair reading of

---

[10] To that point, Wagner's Complaint also includes allegations that the Commonwealth withheld psychological and social evidence about Payne (Compl. at 10), an email by an assistant district attorney claiming that Adams told police that Payne "was also one of the shooters" in King's homicide (*id*.), and an internal document dated less than three months after the murder suggesting that homicide detectives and the "Commonwealth" thought Payne was actually involved in King's murder (*id*. at 10-11).

Wagner's factual allegation, particularly considered against the backdrop of Wagner's other allegations pertaining to Payne that are not mentioned in the Defendants' Motion, could plausibly support due process claims for coercion and fabrication—claims that concern the fairness of the proceedings and do not impugn the validity of the second conviction.[11]

That said, Wagner's *pro se* Complaint is not a model of clarity or consistency.  In his introductory statement, he argues that the actions of police led to his incarceration even though he did not commit the murder, (*id.* at 8).  But those statements do not compel the dismissal of a *pro se* plaintiff's due process claims on *Heck* grounds.  In another two-conviction case in this District, *Gladden*, the Court also confronted a § 1983 complaint where the plaintiff argued that the City's and its detective's constitutional violations caused him to be "wrongfully arrested and prosecuted without probable cause and wrongfully incarcerated for twenty-four years," suggesting that he was "actually innocent" of the crimes.  *Id.*, 2022 WL 605445, at *6.  The Court declined to dismiss Gladden's due process claims of fabricating evidence and deliberate deception despite "inartful pleading" by the plaintiff, who was represented by counsel.  *Id.* ("Neither of these claims [for fabrication of evidence or deliberate deception] require Mr. Gladden to show he is actually innocent of *third-degree murder*—despite him suggesting he is indeed actually innocent in his pleading.")  In Wagner's case, because the nature of the claims at issue are due process claims, they are legally distinct from the ultimate finding on guilt.  "[T]he fact that an error undermines confidence in the jury's verdict [in the first conviction] does not mean that a jury *could not* have found guilt beyond a reasonable doubt after the error was corrected."  *Natividad*, 2025 WL 1550740, at *5; *id.* at *5 n.6 (concluding that even if due

_____

[11] To the extent that the evidence may be construed to also support a malicious prosecution claim, that claim would be *Heck*-barred, as explained in **B.2**.

17

process violations are found to have occurred, that "do[es] not necessarily imply the invalidity of [the plaintiff's] second conviction because they do not mean the second conviction *must have* turned out differently than the first." (citations omitted)).  Accordingly, because Wagner's due process claims, if successful, would not undermine his subsequent plea of guilt, Defendants' Motion arguing the Counts 1-3 are *Heck*-barred will be denied.

**2.    The Malicious Prosecution Claim (Count 5) and Wrongful Imprisonment Claim (Count 6) are *Heck*-Barred**

In Count 5, Wagner asserts a state law malicious prosecution claim against the individual Defendants.  (Compl. at 12.)  Although asserted as a state law claim only, the Court will liberally read Wagner's Complaint as asserting a Fourth Amendment malicious prosecution claim as well.[12]  *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name.").  The Moving Defendants contend that that Count 5 is barred because, as Wagner remains convicted of King's murder, he is "both *Heck* barred from bringing a malicious prosecution claim, as well as categorically unable to establish the second element of a malicious prosecution claim, namely, that the proceeding ended in his favor." (ECF No. 13 at 6.)  The Court agrees that Wagner's malicious prosecution claim (whether alleged under state and federal law) is barred by *Heck* because the criminal proceedings related to King's murder did not end in Wagner's favor, and

---

[12] A malicious prosecution claim under § 1983 has five elements: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007).  For a malicious prosecution claim under Pennsylvania law, the plaintiff must allege the first four of those elements, but not the fifth. *Ogrod v. City of Philadelphia*, 598 F. Supp. 3d 253, 263 (E.D. Pa. 2022) (citing *Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 379 (E.D. Pa. 2018).

18

success would necessarily call the subsequent plea into doubt. *Carson*, 2024 WL 3792223, at *6; *see also Poventud*, 750 F.3d at 136 (stating that "had Poventud's complaint sounded in malicious prosecution, rather than in a *Brady*-based claim, that claim would have been barred because of the favorable termination element of the malicious prosecution tort." (citing *DiBlasio v. City of New York*. 102 F.3d 654, 657 (2d Cir. 1996))).

As to Count 6, Wagner styles the claim under the Eighth Amendment's proscription against cruel and unusual punishment, but that protection does not apply until "after sentence and conviction." *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989)).  In consideration of the facts he alleges, the Court understands Count 6 to be a claim for wrongful imprisonment under the Fourth Amendment, to the extent it could be distinguished from Wagner's malicious prosecution claim.  (*See id*. at 8 ¶8 (generally alleging that his claims seek compensation for Defendants' actions that led to his wrongful arrest, prosecution, and incarceration, and that "[a]s a result of that misconduct, Mr. Wagner spent more than 12 ½ years in prison.")).

Under these circumstances, the malicious prosecution and wrongful imprisonment claims are two sides of the same coin.  *Heck* instructs that, to recover damages for wrongful imprisonment, a plaintiff must show that the confinement has been ruled unlawful.  *In re Banks*, 699 F. App'x 132, 133 (3d Cir. 2017) (*per curiam*) (citing *Heck*, 512 U.S. at 486-87).  To the extent that Wagner alleges that his imprisonment for King's murder was wrongful, he must show that imprisonment based upon the second conviction for King's murder has been ruled unlawful, which it has not been.  *Id*.  As noted above, Wagner was sentenced on the second conviction to a term of 14 to 28 years in prison, with credit for time served.  Considering that the state court gave him credit for the time he had already served when it convicted and sentenced him to

19

King's murder a second time, the time he already served became part of his new sentence. As Wagner cannot demonstrate that the second conviction and sentence for King's murder has been invalidated, his wrongful imprisonment claim is barred. *Cf. Olsen v. Correiro,* 189 F.3d 52, 55, 70 (1st Cir. 1999) (affirming decision that § 1983 suit seeking "incarceration-based damages" would have impugned validity not only of original murder conviction but also of subsequent conviction based on plea to manslaughter); *id*. at 69 (noting that nolo contendere plea constitutes agreement that both sentence and conviction are valid). Accordingly, these *Heck*-barred claims are dismissed without prejudice. *See, e.g., Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016) (stating that *Heck*-barred claims must be dismissed without prejudice).

### C. Failure to State a Claim

#### 1. Claims Alleged Against Defendant Rios

The moving Defendants assert that Wagner failed to plausibly allege that Defendant Rios was personally involved in any constitutional violations claimed in the Complaint. A plaintiff in a § 1983 action must allege how each defendant was personally involved in the events and occurrences giving rise to the claims brought against that defendant. *See id*. In other words, "[e]ach Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original). In his factual allegations, Wagner's only mention of Rios is that he received a radio dispatch about shots fired and traveled to the location, and then yelled "Stop, [P]olice," when Wagner and his co-defendant were spotted running near the scene. (Compl. at 8.) These sparse facts do not allege any misconduct on the part of Rios, nor does Wagner plausibly allege how they relate to the claims of fabrication of evidence, coercion, withholding of exculpatory evidence, malicious prosecution, and cruel and unusual punishment.

20

*See Scheing v. Fountain*, 729 F. App'x 175, 178 (3d Cir. 2018) (explaining that plaintiffs must plead each defendant's involvement with "appropriate particularity" to ensure that government officials are only held liable for their own misconduct).

In his Response, Wagner claims that Rios "engaged in file tactics in Plaintiff's criminal case (in violation of his Due Process Rights) which was ultimately reversed on Collateral Proceedings due to Nordo's conviction of misconduct, as will be shown in discovery."  (ECF No. 20 at 3.)  This allegation about Rios does not appear in the Complaint.  Even if it had, Wagner's allegation that his conviction and sentence were vacated on account of the alleged wrongdoing of Nordo plainly does not suffice to allege Rios's liability under § 1983 just because Rios is also a police officer involved in the case.  *See Jutrowski*, 904 F.3d at 290 (explaining that § 1983 requires a plaintiff to plead that "each Government-official defendant, *through the official's own individual actions*, has violated the Constitution"); *id*. (rejecting the proposition that an "individual's cohorts who happen to be in the immediate vicinity" could be held liable under § 1983).  Nor do Wagner's vague allegations of "file tactics" or speculation that discovery will unearth some wrongdoing by Rios suffice to state a claim here.  Although a plaintiff need only allege enough facts to "raise a reasonable expectation that discovery will reveal evidence" of each element of his claim, *see Connelly*, 809 F.3d, at 788–89, Wagner has not raised *any* facts with respect to Rios that lead to a reasonable expectation of liability.  "Conclusory assertions of fact and legal conclusions," are not entitled to the presumption of truth.  *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016); *see also Phillips v. County of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008) (concluding that alleged factual allegations in complaint must be sufficient to "raise a right to relief above the speculative level" (quoting *Twombly*, 550 U.S. at 556)); *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 176 (3d Cir. 2010)

21

(noting that a plaintiff must show some entitlement to relief more than "labels and conclusions"). Because Wagner asserts no plausible facts reflecting that Rios was personally involved in the alleged deprivation of his constitutional rights, the Court will grant the Moving Defendants' Motion as to Rios and dismiss the claims alleged against him.

### 2. Due Process Claim against Defendant Scally for Withholding of *Brady* Evidence (Count 3)

A plaintiff asserting a violation of *Brady* must plausibly allege: "(1) the evidence at issue is favorable to the accused, because [it is] either exculpatory or impeaching; (2) the prosecution withheld it; and (3) the defendant was prejudiced because the evidence was 'material.'" *Breakiron v. Horn*, 642 F.3d 126, 133 (3d Cir. 2011) (reversing denial of habeas relief based on *Brady* violation); *Carson*, 2024 WL 3792223, at *5 (applying these elements to a § 1983 due process claim for withholding *Brady* evidence); *Palmore v. Clarion Univ. of Pa.*, No. 21-106, 2025 WL 1882837, at *7 (W.D. Pa. July 8, 2025) (same).  Scally contends that Wagner has failed to state a plausible due process claim.  (ECF No. 13 at 8-9.)  He argues that "much of the 'suppressed' evidence was actually introduced at his first trial," in particular, Wagner's contentions that Adams testified Nordo paid him to testify against Wagner and that Payne testified he was threatened during the police interview.  (ECF No. 13 at 9 (citing Compl. at ¶12, ¶13.))  The argument ignores the evidence that Wagner specifically identifies in the Complaint as "exculpatory evidence" that was withheld from him and they do not mention the alleged CIU evidence Wagner claims was disclosed on March 23, 2022.  (*See* Compl. at 10-11, ¶¶ 20-22.) For example, Wagner alleges that the CIU uncovered that the Commonwealth withheld: (1) a neuropsychological and social history report concerning Payne's mental health history, diagnoses, and cognitive functioning (¶ 21); (2) apparent testimony of a mitigation specialist at Payne's sentencing regarding Payne's cognitive functioning (¶ 21); (3) a December 17, 2010

email sent internally by an assistant district attorney reflecting that Adams had stated that Payne was one of the shooters of King, and that he (the district attorney) believed that was the motive for the Adams shooting (¶ 22); (4) a May 1, 2010 assistant district attorney's email noting that "homicide thinks Amin Payne was actually involved in the Braheem King shooting, too; so does our Commonwealth," and positing that that was the reason for Payne's shooting Adams (¶ 22). Wagner further contends generally that Defendants withheld evidence of Nordo's "egregious conduct" showing that he "engaged in a pattern and practice of coercing and fabricating statement(s) through the use of force, duress, bribery, an[d] other illegal coercive methods." (*Id.* at 10 ¶ 20.)  Wagner claims that he did not learn of Nordo's misconduct in other cases until August 2018.

At this stage in the proceedings, the Court must accept the well-pleaded facts alleged by Wagner as true, draw reasonable inferences in his favor, and ask whether the facts are sufficient to raise a plausible *Brady* claim against Defendant Scally.[13]  *Shorter*, 12 F.4th at 374; *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (explaining that, in a § 1983 action, a court must determine whether a plaintiff has alleged the defendants "personal involvement in the alleged wrongs").  In some places, Wagner vaguely alleges "the Commonwealth withheld," which does not satisfactorily nail down Scally's role in those events for purposes of § 1983.  *See Rode*, 845 F.2d at 1207.  That alleged evidence nonetheless serves to illuminate Wagner's allegations made specifically with respect to Scally's actions and it

---

[13] Wagner's due process claims for fabrication of evidence, coercion, and *Brady* violations naturally overlap here due to the nature of the recently-disclosed evidence which concerns statements given at interviews, alleged coercive tactics used to influence the statements, and the alleged submission of the false testimony at trial of two key trial witnesses.  For example, some of the allegedly withheld evidence concerning the supposedly coerced interview of Adams could be viewed as supporting the coercion, fabrication, and *Brady* claims.

highlights where reasonable inferences may be drawn.[14]  Wagner alleges that Scally interviewed Payne and Adams on February 20, 2010 with Nordo, where they "used coercive methods and fabricated the signatures on the photo of Mr. Wagner" by Adams, and "fabricated and coerced Payne's statement."  (Compl. at 9, ¶¶ 12, 13.)  While Scally correctly argues that those witnesses testified to being paid (Adams) and threatened (Payne) during the interviews, Wagner alleges that the CIU uncovered evidence that Adams stated (but did not testify) that Payne was not just a bystander but a shooter of Braheem King.  (*Id*. at 10, ¶22.)  At this stage of the case, Wagner has plausibly pleaded that that evidence allegedly provided in the CIU's *Brady* letter constituted impeachment material for Payne and Adams, and further, he has plausibly pleaded that Scally coerced testimony and falsified evidence later given at trial that went undisclosed until March 2022.  *See Handy v. City of Philadelphia*, No. 24-1905, 2024 WL 4309973, at *4 (E.D. Pa. Sept. 26, 2024) (noting that allegations that detective was present during interrogation and that detective failed to disclose an alleged coerced confession used at trial "means that *someone* failed to comply with their obligations under *Brady*" and permitting the claim to proceed to discovery) (citing *Bravo v. City of Philadelphia*, No. 22-5190, 2023 WL 6133171, at *3-4 (E.D. Pa. Sept. 19, 2023) (refusing to dismiss for plaintiff's failure to identify "[which defendants] exactly made which decisions"); and then citing *Walker v. Doe*, No. 14-1504, 2015 WL 5567928 at *3 (W.D. Pa Sept. 22, 2015) (similar)).  The allegation that Adams allegedly told Scally (and Nordo) that Payne participated in the shooting, when Payne went on to be the sole testifying

---

[14] Police officers may violate obligations under *Brady* when they fail to disclose exculpatory information to the prosecutor.  *Gibson v. Superintendent of N.J. Dep't of L. & Pub. Safety Div. of State Police*, 411 F.3d 427, 443 (3d Cir. 2005).  "This includes, for example, when officers suppress the extent of their impermissible law enforcement tactics."  *Handy v. City of Philadelphia*, No. 24-1905, 2024 WL 4309973, at *4 (concluding that the allegation a detective was in the room at the interrogation permitted an inference that he knew of alleged coercion).

eyewitness against Wagner at trial, may be considered "material" under the circumstances. *Id*. at *5 (allegations supporting inference of coerced confession was material, given that defendant was retried and acquitted after the evidence came to light). For these reasons, the Defendants' Motion will be denied on the *Brady* claim.

### 3.    Municipal Liability Claim (Count 4)

In Count 4, Wagner asserts that the City "with deliberate indifference, adopted and/or acquiesced in policies, practices, and customs . . . and further, . . . failed to properly train, supervise, and/or discipline officers and, as such, [were] a moving force in the violations of Mr. Wagner's Constitutional rights." (Compl. at 12.) A plaintiff may plead a basis for municipal liability under § 1983 in two ways. First, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted). Allegations that simply paraphrase the

standard for municipal liability are too vague and generalized to support a plausible claim. *See McTernan*, 564 F. 3d at 659; *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*" (citing cases)).

The second way a plaintiff may state a basis for municipal liability is by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* In this context, the plaintiff must allege that the inadequacy in the training actually caused the constitutional violation at issue. *City of Canton*, 489 U.S. at 388; *Carson*, 2024 WL 3792223, at *7. Usually, "a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of failure to train." *Thomas v. Cumberland County*, 749 F.3d 217, 223 (3d Cir. 2014) (citation omitted).

The City argues that Wagner has not alleged any facts that plausibly give rise to *Monell* liability, and that his Complaint does not even provide notice of his legal theory or conform to basic tenets of pleadings with respect to the municipal liability claim. (ECF No. 13 at 9.) The Court agrees that Wagner has not stated a claim under *Monell*, considering that Wagner has simply parroted the *Monell* legal standard to plead his municipal liability claim (*see* Compl. at 12) without identifying a policy or custom by the City that has caused any of the constitutional

26

injuries claimed in his Complaint. *Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (concluding that a plaintiff must allege more than "vague assertions" of a policy or custom to plead a claim under *Monell*). Wagner vaguely contends that "it was revealed" Nordo and Scally had "a history of [e]ngaging in a pattern and practice of coercing and fabricating statement(s), through the use of force, duress, bribery, and other illegal, coercive methods." (Compl. at 9; *see also id*. at 10.) But this says nothing about a custom/policy or failure to supervise, train, or discipline by *the City*, because it merely asserts the misconduct of its singular employees. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (holding that municipalities "are not vicariously liable under § 1983 for their employees' actions."); *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."). Wagner has also not pleaded that the City failed or inadequately trained its officers, or that the deficiency constituted deliberate indifference. *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011) (citing *City of Canton*, 489 U.S. at 388 (1989)); *see also Carson*, 2024 WL 3792223, at *8 (dismissing supervisory liability claims where plaintiff pleaded no facts showing that police department "routinely failed to train its employees to refrain from perjury" where plaintiff alleged police gave false testimony at trial).

Wagner has failed to plead a plausible claim for municipal liability under either theory. Accordingly, the Court will grant the Moving Defendants' Motion to Dismiss Count 4, but the dismissal will be without prejudice.[15]

---

[15] The Moving Defendants also seek dismissal of Count 6 for failure to state a claim, (*see* ECF No. 13 at 10), but because the Court has already ruled that it is barred by *Heck*, the Court need not address that argument.

### D.      Dismissal of White, Golphin, and Stevens for Failure to State a Claim

As noted above, the Court may independently screen and dismiss the Complaint "at any time" pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) if it fails to state a claim against a defendant. *Brown*, 941 F.3d at 662.  Because Wagner has not alleged sufficient facts to raise a plausible claim against White, Golphin, or Stevens, and/or the claims are barred under *Heck*, the Court will dismiss the claims against those Defendants.

Aside from the introductory paragraphs identifying White and Golphin as police officers when Wagner was arrested and charged (Compl. at 5), Wagner never mentions either of those Defendants elsewhere in his factual allegations.  (*See id.* at 8-11.)  There is no indication that those two Defendants were involved in his prosecution in any way, much less that they were personally involved in the constitutional claims Wagner raises.  *Rode*, 845 F.2d at 1207.  As for Stevens, it appears that he was involved in Wagner's initial apprehension, but nothing else. Wagner mentions that the officer was traveling with Rios when they spotted Wagner and his co-defendant and chased them.  (Compl. at 8.)  Stevens frisked and handcuffed Wagner, and he took Wagner to the homicide unit.  (*Id*.)  According to the facts alleged in the Complaint, that is where Stevens's involvement ended.  Wagner does not provide facts showing that Stevens took any actions that played a part of the fabrication of evidence, coercion, suppressed evidence, malicious prosecution, and cruel and unusual punishment claims in the Complaint.[16]  Stevens is not even alleged to have been "in the immediate vicinity" of persons that Wagner claims violated

---

[16] For the same reasons provided above, Count 5 for Malicious Prosecution would also be untenable against these Defendants because the claim is barred by the favorable termination rule in *Heck*, and Wagner's Count 6 alleging cruel and unusual punishment fails to state a claim, in any event.

28

his rights. *See Jutrowski*, 904 F.3d at 290 (citing *Anela v. City of Wildwood*, 790 F.2d 1063. 1067-68 (3d Cir. 1986)).

Wagner's assertion that "[d]iscovery will show what actually occurred and what role each defendant played in the violations suffered by Plaintiff," and that "[d]iscovery will show that all defendants were aware and/or present when the violations suffered by Plaintiff occurred" (ECF No. 32) is insufficient to nudge his claim over the plausibility line. Again, these vague and generalized statements that the involvement of "defendants" will somehow materialize in discovery, without any facts in the Complaint to support such an expectation, amount to nothing more than speculation. *Phillips,* 515 F.3d at 234 (explaining that alleged facts must "raise a right to relief above the speculative level" (citation omitted)). These statements, too, lack any allegations of personal involvement by specific defendants. *Walker v. Wetzel*, No. 22-1357, 2022 WL 4103632, at *3 (3d Cir. Sept. 8, 2022) (*per curiam*) (affirming district court's conclusion that generalized reference to "officers" did not allege personal involvement). Wagner's claims alleged against White, Golphin, and Stevens will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

## IV. CONCLUSION

For the foregoing reasons, all official capacity claims alleged against Defendants Rios, Scally, Stevens, Golphin, and White will be dismissed with prejudice. The Court will grant the Moving Defendants' Motion to Dismiss in part and deny it in part. The Motion is granted insofar as the Court will dismiss all claims against Defendant Rios with prejudice for failure to state a claim; dismiss *Heck*-barred Count 5 for Malicious Prosecution and Count 6 for Wrongful Imprisonment without prejudice to Wagner filing a new civil rights complaint only in the event his convictions are reversed, vacated, or otherwise invalidated; and dismiss Count 4 alleging

29

Municipal Liability against the City without prejudice for failure to state a claim. The Motion will otherwise be denied. The Court will further dismiss with prejudice all claims against Stevens, Golphin, and White for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). His remaining due process claims of Fabrication of Evidence (Count 1), Coercion (Count 2), and Suppression of *Brady* Evidence (Count 3) against Defendant Scally will be allowed to proceed at this time. The Motion to Appoint Counsel (ECF No. 6) is denied as moot because the Court already referred the matter to the Prisoner Civil Rights Panel for possible appointment of counsel.

Wagner will be given the option of proceeding on these remaining claims or filing an amended complaint if he is able to allege additional facts to state a plausible *Monell* claim. An appropriate Order accompanies this Memorandum, which provides further guidance for proceeding.

BY THE COURT:

*s/ Catherine Henry*

**CATHERINE HENRY, J.**

30