IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MILIQUE WAGNER,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-1450** |
| | : | |
| **CITY OF PHILADELPHIA, *et al.*,** | : | |
| **Defendants.** | : | |

# MEMORANDUM

**HENRY, J.** **November 16, 2026**

Plaintiff Milique Wagner filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, naming as Defendants the City of Philadelphia ("the City"), Detective Philip Nordo, Detective Gary White, Detective Timothy Scally, Police Officer Justin Rios, Police Officer William Golphin, and Police Officer Daniel Stevens. (ECF No. 2 at 4-5.) The Court previously granted in part and denied in part a motion to dismiss filed by the City, Scally, and Rios. *See Wagner v. City of Philadelphia*, No. 25-1450, 2026 WL 789450, at *1 (E.D. Pa. Mar. 20, 2026). As Wagner had been granted *in forma pauperis*, the Court also screened claims alleged against White, Golphin, and Stevens and dismissed them with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.[1] *Id.* at *13. Certain claims alleged against Scally were permitted to proceed, but Wagner was also given leave to amend his complaint. *Id.* at *14. Wagner filed an Amended Complaint against the City, Nordo, White, and Scally on April 15, 2026. (*See* ECF No. 47.) The City and Scally filed a Motion to Dismiss the Amended

---

[1] At the time he filed this civil action, Wagner was incarcerated at SCI Phoenix and subject to the provisions of the Prison Litigation Reform Act of 1995. He has since been released. (*See* ECF No. 2 at 3; ECF No. 40.)

Complaint (ECF No. 49), and Wagner submitted a response in opposition (ECF No. 51). The matter is now ripe for decision on the Moving Defendants' Motion to Dismiss the Amended Complaint.

## I. FACTUAL ALLEGATIONS AND RELEVANT PROCEDURAL BACKGROUND[2]

### A. Alleged Facts[3]

In February 2013, Wagner was convicted and sentenced to a life term on charges of first-degree murder, criminal conspiracy, and possessing an instrument of crime. *Commonwealth v. Wagner*, No. 1556 EDA 2013, 2015 WL 6394374, at *2 (Pa. Super. Ct. Jan. 29, 2015). Wagner's convictions were vacated in 2023, and he pleaded guilty on May 2, 2023 to lesser charges of third-degree murder and conspiracy, for which he received a reduced sentence of 14 to 28 years. *Commonwealth v. Wagner*, CP-51-CR-0000127-2011 (C.P. Philadelphia).

---

[2] The factual allegations set forth in this Memorandum are taken from Wagner's Amended Complaint and attachments. (ECF No. 47.) The Court deems the entire submission to constitute the Amended Complaint ("Am. Compl."), and adopts the pagination supplied by the CM/ECF docketing system. Where needed, grammar, spelling, and punctuation in quotes from Wagner's pleadings will be corrected for clarity. The Court may take judicial notice of prior court proceedings. *See Orabi v. Att'y Gen.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) ("We may take judicial notice of the contents of another Court's docket.") (collecting cases).

[3] Wagner's Amended Complaint contains far fewer facts than the original Complaint. Because the Amended Complaint supersedes the original Complaint, the allegations set forth in the Amended Complaint govern. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) ("If a plaintiff amends her complaint, the new pleading 'supersedes' the old one: The 'original pleading no longer performs any function in the case.'" (citation omitted)). The Court thus cannot look to the original Complaint "to help fill the factual void in [plaintiff's] amended complaint." *March v. Dep't of Defense*, No. 25-1650, 2025 WL 2417754, at *1 (3d Cir. Aug. 21, 2025) (*per curiam*) (citing *Royal Canin*, 604 U.S. at 35). The Court warned Wagner in its March 20, 2026 Order that any amended complaint could not rely on the initial complaint or other papers and that he needed to reallege all claims that had not been dismissed, ***including all factual allegations***, or they could be deemed to be abandoned. (ECF No. 43 at 2.)

Defendants Nordo, White, and Scally were police detectives for the Philadelphia Police Department. (Am. Compl. at 1.) Wagner asserts that Nordo and White coerced witness Amin Payne into providing statements implicating Wagner.[4] (*Id.* at 2.) At trial, Payne admitted that his statements were coerced. (*Id.*) Payne testified that police threatened that if he didn't sign the statement, he would be locked up. (*Id.* at 5.) Even though they knew Payne's statements were coerced, "Defendants caused these statements to be used against Plaintiff." (*Id.* at 2.)

Nordo and Scally obtained a statement from James Herman Adams. (*Id.*) Adams apparently testified that homicide investigators did not threaten him or tell him what to say, but he was under pressure. (*Id.* at 6.) The "short detective" paid Adams $20 and told Adams that when he was finished, he could go home. (*Id.*) Adams "d[idn't] know why" the detective gave him $20, and he did not know what it was for. (*Id.*) Wagner further alleges that Nordo sexually harassed and abused him. (*Id.* at 2.)

Wagner received a report from the Conviction Integrity Unit (CIU) of alleged exculpatory and impeachment material.[5] (*Id.* at 2, 7.) The CIU allegedly uncovered the following evidence that was previously withheld, according to an otherwise unattributed document Wagner attached to his Amended Complaint:

> Amin Payne's neuropsychological evaluation reflecting that Payne's full scale IQ was 6.1.[*sic*], placing him in the 0.5 percentile or extremely low range [of] intellectual functioning. The evaluation described Payne as presenting a classic picture of mental retardation. According to the social history report, Payne has been in and out of treatment for bipolar disorder, ADHD, and

---

[4] Wagner alleged in his original Complaint that Scally, not White, interviewed Payne with Nordo. (ECF No. 2 at ¶ 13.)

[5] The Court understands "Conviction Integrity Unit" to refer to the unit of Philadelphia District Attorney's Office of that name investigating certain past convictions secured by the District Attorney's Office. https://phillyda.org/safety-and-justice/investigations/conviction-integrity-unit-ciu/ (Last visited Oct. 13, 2026).

> his behavior has displayed an unconfirmed diagnosis of schizophrenia for most of his life. He was first committed to a psychiatric hospital at age 10. At Payne's sentencing hearing, a mitigation specialist described how Payne's low intellectual functioning affected him: [h]is IQ affects him in his everyday life. He can't remember what he ate for breakfast the day before. He doesn't know simple things, such as how to count or make exchange [*sic*]. It was concluded that he will never be able to function on his own. [. . .]
>
> The Commonwealth withheld [. . .] an internal email sent by a[n] Assistant District Attorney in connection with Payne's prosecution in the James Herman Adams shooting. On December 17, 2010, an ADA sent an email in which he noted that James Adams allegedly stated that Amin Payne was also one of the shooters in connection with the homicide of Braheem King; and the ADA believes that this was the motive for the shooting in that case. In another internal document dated May 1, 2010, an Assistant [. . .] District Attorney noted, homicide thinks Amin Payne was actually involved in the Braheem King shooting, too; so does our Commonwealth. And he (ADA) thinks that's why Amin Payne shot him.[6]

(*Id*. at 7.) Wagner asserts the evidence would have impeached key witnesses, undermined the case against him, and supported his innocence. (*Id*. at 2.)

Wagner claims that the City maintained unconstitutional policies and customs that caused his injuries. (*Id*. at 3.) He alleges in conclusory terms only that the City failed to properly train and supervise detectives, tolerated witness coercion and fabrication of evidence practices, failed to discipline officers for misconduct, and committed systemic *Brady* violations. (*Id*.)

---

[6] Payne shot Adams just over a month after they both were interviewed on February 20, 2010, at the police station. *Wagner*, 2018 WL 6617359, at *1 n.1. Payne was convicted of robbery and aggravated assault for Adams's shooting after a trial in November 2011. *Commonwealth v. Payne*, No. 3264 EDA 2011, 2013 WL 11253336, at *1 (Pa. Super. Ct. Oct. 8, 2013).

### B. Relevant Procedural History

The Court recounted prior procedural history in its March 20, 2026 Memorandum granting in part and denying in part the Rule 12(b) Motion to Dismiss the Complaint filed by the City, Rios, and Scally. *See Wagner*, 2026 WL 789450, at *3-4. Wagner's original Complaint raised claims against the police detectives and officers for: (1) Fabrication of Evidence; (2) Coercion of Witnesses; (3) Deliberate Suppression of *Brady* Evidence; (5) Malicious Prosecution under Pennsylvania Law; and (6) Cruel and Unusual Punishment. (ECF No. 2 at 11-12.) In Count (4), Wagner asserted a claim of Municipal Liability against the City. (*Id.* at 12.) The Moving Defendants argued counts (1)-(3), (5), and (6) were barred by the favorable termination rule pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), but the Court only agreed that the claims for malicious prosecution (5) and wrongful imprisonment (6) were barred. *Wagner*, 2026 WL 789450, at *6-10, *14. The Court also dismissed all claims with prejudice against Rios for failure to state a claim, and dismissed the municipal liability claim against the City without prejudice. *Id.* at *14. All claims against Stevens, Golphin, and White were also dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because Wagner failed to assert any factual allegations in his Complaint raising a plausible § 1983 claim against those Defendants. *Id.* Relevant here, the Court denied Scally's motion to dismiss as to the *Brady* violation claim, and it permitted that claim plus the remaining due process claims to proceed. *Id.* Wagner was given the option of proceeding on the remaining claims or filing an amended complaint. *Id.* In its Order, the Court explained that an amended complaint had to be a complete document and that Wagner could not "rely on the initial complaint or other papers filed in the case to state a claim." (ECF No. 43 at 2.) The Court further cautioned that "**if Wagner file[d] an amended complaint, he must reallege all claims that ha[d] not yet been dismissed,**

**including all supporting factual allegations, or those claims [would] be deemed to have been abandoned**."[7] (*Id.*)

Wagner then filed his Amended Complaint, asserting claims based on fabricated evidence, withheld evidence in violation of *Brady*, failure to intervene to protect constitutional rights, municipal liability, and sexual misconduct. (ECF No. 47 at 3-4.) He names Scally, Nordo, and the City, plus Defendant White, who had been dismissed as a party on March 20, 2026. (*Id*. at 1.) Scally and the City have moved to dismiss the Amended Complaint, arguing that (1) Wagner failed to state a claim for fabrication of evidence, (2) Scally was not personally involved in the alleged *Brady* violation; (3) Scally is entitled to qualified immunity on the failure to intervene claim, and (4) Wagner failed to state a municipal liability claim under *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658 (1978). (ECF No. 49.) Wagner filed a response in opposition to the Motion to Dismiss the Amended Complaint. (ECF No. 51.)

## II. STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Peters v. Brown,* 793 F. App'x 118, 123 (3d Cir. 2019) (*per curiam*) (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (internal quotations omitted). In deciding the City's and Scally's motion to dismiss under Rule 12(b)(6), the Court must determine whether the Amended Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

[7] After the Court issued its Memorandum and Order, Defendant Nordo filed an answer to the Complaint. (ECF No. 45.)

defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).

To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up) (*abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024)). Because Wagner is proceeding *pro se*, the Court construes his allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245).

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)*; see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (same). The Court may also take judicial notice of prior court proceedings. *See Orabi v. Att'y Gen.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) ("We may take judicial notice of the contents of another Court's docket.") (collecting cases). "When presenting a Rule 12(b)(6) motion, the defendant bears the

burden to show that the plaintiff has not stated a claim." *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

Additionally, since Wagner is proceeding *in forma pauperis*, the Court may independently screen and dismiss claims in the Amended Complaint "at any time" pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) if, among other things, it fails to state a claim against a defendant. *Brown v. Sage*, 941 F.3d 655, 662 (3d Cir. 2019) (*en banc*) ("To repeat, the statute requires a court to dismiss an IFP complaint 'at any time' if it determines that the complaint is frivolous, malicious, or fails to state a claim."). The standard of review under this screening provision is the same standard that governs a dismissal under Rule 12(b)(6). *See Tourscher*, 184 F.3d at 240.

## III. DISCUSSION

Wagner once again brings the claims in his Amended Complaint pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

### A. Fabrication of Evidence Claim[8]

[8] With the exception of identifying him as a police officer at the time of the arrest, Wagner did not allege any facts against Defendant White in the original Complaint. (ECF No. 2 at 5.) In the original Complaint, Wagner alleged that Defendant Scally had interviewed witness Amin Payne with Defendant Nordo on February 20, 2010, and that Scally "fabricated and coerced Payne's statement" and had "a history of [e]ngaging in a pattern and practice of coercing and fabricating statement(s), through the use of force, duress, bribery, and other illegal, coercive methods." (*Id*. at 9.) The Court accordingly analyzed the first motion to dismiss the claims

Wagner alleges in his Amended Complaint that Scally improperly induced James Herman Adams to sign a statement by paying him $20. (Am. Compl. at 2.) Wagner attaches part of a purported transcript of Adams's direct testimony from Wagner's trial, in which Adams testified that investigators did not threaten him or tell him what to say, but that one detective gave him $20 and told him that he could leave after he finished. (*Id.* at 6.) When asked whether Adams was saying that the detective "paid you to give the statement," Adams apparently answered "I mean, I don't know why. I still don't understand why he gave me $20. I don't know for what it was. I don't know." (*Id.*) Wagner asserts in the Amended Complaint that

---

involving Scally's interrogation of Amin Payne, just as Wagner alleged. *See Wagner*, 2026 WL 789450, at *2, *11. Pursuant to § 1915(e)(2)(B)(ii), the Court considered the absence of allegations against Defendant White, dismissed any claims with prejudice, and terminated him from the action on March 20, 2026. *Id.* at *14.

In his Amended Complaint, Wagner alleges that White had "coerced witness Amin Payne into providing statements implicating Plaintiff" with Nordo. (*Id.* at 1-2.) Wagner provides no explanation why he changed the identity of the Defendant who allegedly coerced Payne from Scally to White. Although there are circumstances where a Plaintiff may amend the identify of a defendant under Federal Rules of Civil Procedure 15(c)(1)(C), Wagner has not explained how he meets the requirements for doing so under that rule. *Rivera v. New Castle Cnty. Police Dep't,* 152 F.4th 147, 152 (3d Cir. 2025) (noting that, under Fed. R. Civ. P. 15(c)(1)(C)(ii), an amended complaint may relate back when a plaintiff makes a "mistake concerning the proper party's identity").

In any event, Wagner has not stated a plausible Fabrication of Evidence or *Brady* Violation claim against White. (Am. Compl. at 3.) The full extent of Wagner's threadbare allegations in the Amended Complaint of White's involvement is that he "coerced witness Amin Payne into providing statements implicating plaintiff." (*Id.* at 2.) But this statement is a legal conclusion unsupported by facts and cannot serve as the basis for a plausible fabricating evidence claim. *Natividad v. Raley*, No. 22-5061, 2025 WL 1550740, at *6 (E.D. Pa. May 30, 2025) (explaining that fabrication of evidence claim requires pleading allegations that the defendant "willfully, knowingly or recklessly formulated or submitted false evidence that was introduced at trial" and that, absent that evidence, there was a reasonable likelihood he would not have been found guilty). As Wagner notes, Payne himself asserted at trial that his statement was coerced (Am. Compl. at 2), and, according to a post-conviction state court opinion, Payne refuted the prior statement he gave to police during his testimony. *Commonwealth v. Bryant*, No. 1883 EDA 2016, 2017 WL 4274019, at *7 (Pa. Super. Ct. Sept. 19, 2017). Further, no *Brady* claim lies here based on the allegations in the Amended Complaint as related to the Amin Payne mitigation evidence for the reasons explained, *infra*.

"Defendants knowingly fabricated evidence and caused it to be used against Plaintiff." (*Id*. at 3.) In the Motion for Dismiss, Scally argues that none of these allegations amounts to a fabrication of evidence claim because Wagner "failed to establish that Det. Scally employed coercive techniques . . . [which] resulted Mr. Adams providing a false statement, or that Det. Scally knew Mr. Adams's statement to be false." (ECF No. 49 at 7.)

"[I]f a defendant has been convicted at a trial at which the prosecution has used fabricated evidence, the defendant has a stand-alone claim under section 1983 based on the Fourteenth Amendment." *Mervilus v. Union County*, 73 F.4th 185, 193 (3d Cir. 2023) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014)). For a fabrication of evidence claim, a plaintiff must plausibly allege that a defendant "willfully, knowingly, or recklessly formulated or submitted false evidence that was introduced at trial." *Natividad v. Raley*, No. 22-5061, 2025 WL 1550740, at *6 (E.D. Pa. May 30, 2025) (quoting *Mervilus*, 73 F.4th at 194-95). "Evidence is not fabricated if it is incorrect or simply disputed." *Id*. (citation and internal quotation marks omitted). Not only must a plaintiff plausibly allege that a defendant fabricated evidence in bad faith, but he must also allege the "'reasonable likelihood' that, without the use of the falsified evidence, he would not have been convicted." *Id*. (quoting *Halsey*, 750 F.3d at 294).

The Court concludes that Wagner has failed to state a claim for fabrication of evidence. Wagner's allegations are thin: he alleges that Adams gave a statement to police and that Adams testified that he received $20 to sign the statement. Notably, he fails to allege that the Adams statement was false, let alone that it was presented willfully, knowingly, or recklessly. His sparse allegation that a payment was made to Adams does not provide a foundation for a

plausible claim that Scally personally fabricated evidence.[9] (Am. Compl. at 2). *See Scheing v. Fountain*, 729 F. App'x 175, 178 (3d Cir. 2018) (explaining that plaintiffs must plead each defendant's involvement with "appropriate particularity" to ensure that government officials are only held liable for their own misconduct). As for Wagner's contention that "Defendants knowingly fabricated evidence and caused it to be used against Plaintiff," (*id.* at 3), it, too, is insufficient. When there are multiple events and defendants at issue, alleging personal involvement often cannot be accomplished by repeatedly and collectively referring to the "Defendants" as a group without clarifying the specific basis for each Defendant's liability. *See Lawal v. McDonald*, 546 F. App' x 107, 113 (3d Cir. 2014) (agreeing with the district court that the repeated and collective use of the word "Defendants" "fail[ed] to name which specific Defendant engaged in the specific conduct alleged'").

As suggested, even reading this broad allegation liberally together with the allegation that Scally "obtained a statement" from Adams and that Adams testified he was paid $20, Wagner's claim comes up short in several respects. Wagner has not identified the evidence "used against him" that was allegedly false (whether it was Adams's statement to police or his testimony at trial), or even what, exactly, Wagner contends was false about Adams's statement or testimony. Wagner also does not assert that, absent Adams's evidence, he would not have been found guilty

[9] Wagner states in his Opposition to the Motion to Dismiss that Adams "later signed an affidavit specifically identifying Detective Timothy Scally as the detective who paid him $20 in connection with obtaining his statement." (ECF No. 51 at 1.) But Wagner did not allege that in his Amended Complaint. On review for the motion to dismiss, the Court must refrain from considering additional factual allegations that are not part of the Complaint. *Dade v. Gaudenzia DRC, Inc.*, 2013 WL 3380592, at *2 n.1 (E.D. Pa. Jul. 8, 2013) (noting the preference of district courts in this Circuit to decline to consider factual allegations made in responses to motions to dismiss); *Hanna v. Menges*, No. 21-3812, 2024 WL 1321057, at *4 (E.D. Pa. Mar. 27, 2024) ("[I]t is well-established that a complaint may not be amended by the briefs in opposition to a motion to dismiss.").

of murder. *Black v. Montgomery County*, 835 F.3d 358, 370 (3d Cir. 2016), *as amended* (Sept. 16, 2016) (vacating grant of summary judgment and describing fabrication of evidence claim as requiring "a reasonable likelihood that, without the use of that evidence, the defendant would not have been convicted." *Id.* (quoting *Halsey*, 750 F.3d at 294.)).

Wagner argues in his Opposition to the Motion to Dismiss that the Defendants "improperly attempt to dispute the meaning and significance of the payment and Adams' testimony" in their motion and he argues that the Court cannot consider credibility and competing evidence at the Motion to Dismiss stage. (ECF No. 51 at 1.) While Wagner is correct in principle that evidentiary disputes cannot be entertained at this procedural stage, the flaw here lies in the sparse allegations Wagner has provided in the Amended Complaint, namely that he failed to allege the meaning or significance of the evidence involving Adams in the first place. And, the Court cannot look to the original Complaint "to help fill the factual void" in Wagner's Amended Complaint. *March*, 2025 WL 2417754, at *1; *see also Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (explaining that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings"). For these reasons, the Motion will be granted on the Fabrication of Evidence claim, but the dismissal will be without prejudice.

**B. *Brady* Violation Claim**

A plaintiff asserting a violation of *Brady* must plausibly allege: "(1) the evidence at issue is favorable to the accused, because [it is] either exculpatory or impeaching; (2) the prosecution withheld it; and (3) the defendant was prejudiced because the evidence was 'material.'" *Breakiron v. Horn*, 642 F.3d 126, 133 (3d Cir. 2011) (reversing denial of habeas relief based on *Brady* violation); *Carson v. City of Philadelphia*, No. 23-2661, 2024 WL 3792223, at *5 (E.D.

Pa. Aug. 13, 2024) (applying these elements to a § 1983 due process claim for withholding *Brady* evidence); *Palmore v. Clarion Univ. of Pa.*, No. 21-106, 2025 WL 1882837, at *7 (W.D. Pa. July 8, 2025) (same). Police officers may violate obligations under *Brady* when they fail to disclose exculpatory information to the prosecutor. *Gibson v. Superintendent of N.J. Dep't of L. & Pub. Safety Div. of State Police*, 411 F.3d 427, 443 (3d Cir. 2005). "This includes, for example, when officers suppress the extent of their impermissible law enforcement tactics." *Handy v. City of Philadelphia*, No. 24-1905, 2024 WL 4309973, at *4 (E.D. Pa. Sept. 26, 2024) (concluding that the allegation a detective was in the room at the interrogation permitted an inference that he knew of alleged coercion).

Wagner asserts in the Amended Complaint that "Defendants suppressed material exculpatory and impeachment evidence, including findings contained in a Conviction Integrity Unit (CIU) report." (Am. Compl. at 2.) Wagner alleges the Commonwealth withheld a neuropsychological and social history report concerning Payne's mental health history, diagnoses, and cognitive functioning, and apparent testimony of a mitigation specialist at Payne's sentencing regarding Payne's cognitive functioning. (*Id.* at 7.) The supposed CIU report also references a December 17, 2010 email sent internally by the assistant district attorney prosecuting Payne for shooting Adams, who stated that Adams had said Payne was one of the shooters of King, and that he (the assistant district attorney) believed that was the motive for the Adams shooting. (*Id.*) The report Wagner attributes to the CIU also references "another internal document dated May 1, 2010" in which an assistant district attorney purportedly stated that "homicide thinks Amin Payne was actually involved in the Braheem King shooting, too; so does our Commonwealth," and positing that that was the reason for Payne's shooting Adams. (*Id.*)

Wagner alleges that the evidence would have "[i]mpeached key witnesses," "[u]ndermined the prosecution's case," and "[s]upported plaintiff's innocence." (*Id.*)

In the Motion to Dismiss the Amended Complaint, Scally maintains that the Amended Complaint fails to allege that he, as opposed to prosecutors, personally withheld any *Brady* material. (ECF No. 49 at 8.) Scally argues that "[i]t is axiomatic that [he] cannot be found liable for a *Brady* violation when the information is known to the prosecutor, who then fails to disclose the information to the criminal defendant." (*Id.*) "*Brady* suppression occurs when the government fails to turn over evidence that is known only to police investigators and not to the prosecutors" and police may be liable under *Brady* for "affirmatively concealing material evidence from the prosecutor." *Gilyard v. Dusak*, No. 16-2986, 2018 WL 2144183, at *4 (E.D. Pa. May 8, 2018) (quoting *Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 384 (E.D. Pa. 2018) (internal quotation marks omitted)), *on reconsideration in part*, No. 16-2986, 2018 WL 3014800 (E.D. Pa. June 15, 2018). Scally argues that the mitigation information related to Amin Payne's sentencing in 2011 trial is not alleged to have originated from police or Scally in particular, so he cannot be held liable on that score. (ECF No. 49 at 8.) He argues also that he is not liable regarding the evidence the CIU unearthed about Adams in light of the fact that it is based on emails authored by assistant district attorneys who obviously knew of their substance, which negates the possibility that police "conceal[ed] material evidence from the prosecutor." *Gilyard*, 2018 WL 2144183, at *4. At least one of the emails was reportedly generated by an assistant district attorney who prosecuted Payne in 2011 for shooting Adams. (Am. Compl. at 7.) It is unclear which assistant district attorney authored the May 1, 2010 "internal document." (*Id.*) Wagner has not alleged that Scally affirmatively hid information from the prosecution team. *See Gainey v. City of Philadelphia*, 704 F. Supp. 3d 589, 601 (E.D. Pa. 2023) ("[P]olice

satisfy their obligation 'when they turn exculpatory evidence over to the prosecutors.'" (quoting *Yarris v. County of Delaware*, 465 F.3d 129, 141 (3d Cir. 2006)). The CIU information Wagner provides thus renders implausible his contention that Scally is liable because he neglected obligations under *Brady* since the documents were reportedly authored by assistant district attorneys and reflect awareness of Adams's supposed statement to police and the prosecution theory of Payne's motive when he shot Adams. (Am. Compl. at 7); *Gainey*, 704 F. Supp. 3d at 602 (granting motion to dismiss on *Brady* claim construed as deliberate deception claim because plaintiffs did not allege that officers knew of undisclosed reports but hid them from prosecutor). For these reasons, the Defendants' Motion to dismiss Wagner's *Brady* claim will be granted.

### C. Qualified Immunity – Failure to Intervene Claim

Wagner asserts a claim for "failure to intervene" against all individual defendants, alleging that they had a duty to intervene "to prevent constitutional violations," but failed to act. (Am. Compl. at 3.) Scally moves to dismiss this claim on the ground of qualified immunity and argues that the duty of an official to intervene in another official's fabrication of evidence or withholding of *Brady* material in a criminal case has not been clearly established as a violation of constitutional right. (ECF No. 49 at 9-11.) "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* It "provides ample protection to all but the plainly incompetent or those who knowingly violate the

law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 555 U.S. at 244).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated, and (2) whether that right was "clearly established." *Pearson*, 556 U.S. at 232. These prongs may be considered in either order. *Id*. at 236. A right is clearly established for purposes of the qualified immunity analysis if established precedent from the United States Supreme Court or United States Court of Appeals for the Third Circuit "would have put government officials on fair notice that their conduct violated the plaintiff's rights" at the time of the alleged violation. *Montemuro v, Jim Thorpe Area Sch. Dist*., 99 F.4th 639, 645 (3d Cir. 2024). Qualified immunity is an affirmative defense that must be pleaded and proved by the defendant asserting it. *Halsey*, 750 F.3d at 288.

Scally notes that the basis of Wagner's failure to intervene count is not altogether clear, but he construes it as based on the claims of fabrication and withholding of evidence in the Amended Complaint. (ECF No. 49 at 10.) Scally asserts that no duty to intervene with another officer's constitutional violations in case preparation has been recognized, and that he is, therefore, entitled to qualified immunity. (*Id*.) He relies on two cases where this Court granted officers qualified immunity at the motion to dismiss stage when confronted with those species of failure to intervene claims. (*See id.* at 10 (citing *Outlaw v. City of Philadelphia*, No. 21-1290, 2021 WL 3471168, at *7 (E.D. Pa. Aug. 6, 2021) (dismissing, on qualified immunity grounds, a failure to intervene claim based on alleged false arrest, malicious prosecution, false imprisonment, and deprivation of liberty); *Ogrod v. City of Philadelphia*, 598 F. Supp. 3d 253, 273 (E.D. Pa. 2022) (granting motion to dismiss claim alleging failure to intervene with officers'

alleged fabrication of evidence, on qualified immunity grounds).) The United States Court of Appeals for the Third Circuit has also acknowledged that there is no clearly established right in that Court's or the United States Supreme Court's precedent to have an officer intervene when the underlying constitutional violation does not involve excessive force or sexual assault. *Thomas v. City of Harrisburg*, 88 F.4th 275, 285 (3d Cir. 2023) (affirming the district court's application of qualified immunity and dismissal of a claim alleging failure to intervene to prevent a violation of the right to health care, stating "Though we have recognized a right to have a government actor intervene when the underlying constitutional violation involves excessive force or sexual assault of a person in custody or detention, we have since concluded that our precedent does not establish, let alone clearly establish, a right to intervention in other contexts"); *see also Onyiah v. City of Philadelphia*, 660 F. Supp. 3d 407, 416 (E.D. Pa. 2023) (concluding that "there is simply no persuasive authority on which we could conclude that [plaintiffs] had a clearly established duty to intervene to prevent Plaintiff's coerced confession," and dismissing failure to intervene claim on qualified immunity ground); *Womack v. City of Philadelphia*, No. 24-1167, 2024 WL 4466680, at *8 (E.D. Pa. Oct. 10, 2024) (granting motion to dismiss claim alleging failure to intervene with officers' alleged conduct including coercion, fabrication, withholding exculpatory evidence, on qualified immunity grounds). The Court concludes that Wagner had no clearly established right requiring a government actor to intervene with alleged fabrication or withholding of evidence and, to the extent that the basis for the claim is alleged fabrication or withholding of evidence, Scally is entitled to qualified immunity. Scally's motion will be granted on the basis he articulated, and the failure to intervene claim based on alleged fabrication or withholding of evidence will be dismissed with prejudice.

But Wagner has also alleged a sexual abuse and/or harassment claim against Nordo and it is possible that he intended to use that as the basis for his intervention claim against Scally. (Am. Compl. at 2-3.) To the extent that sexual assault underlies the failure to intervene claim, the Court would not apply qualified immunity at this juncture because the Court of Appeals has recognized the duty of state officials to protect a detained person from known sexual assault. *Thomas*, 88 F.4th at 285 & n.53 (citing *Ricks v. Shover*, 891 F.3d 468, 478 (3d Cir. 2018)). But again, due to the minimal pleading in this case, the Court is left to guess what the basis of Wagner's failure to intervene claim is. Accordingly, while the sexual abuse-based failure to intervene claim will not be dismissed on qualified immunity grounds, the Court will dismiss Wagner's failure to intervene claim without prejudice insofar as it is based on sexual abuse for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**D. Municipal Liability Claim**

A plaintiff may plead a basis for municipal liability under § 1983 in two ways. First, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the

proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted). Allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a plausible claim. *See McTernan*, 564 F. 3d at 659; *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*" (citing cases)). "For *Monell* liability to attach, there must still be a violation of the plaintiff's constitutional rights." *Harris v. Krasner*, 110 F.4th 192, 198 (3d Cir. 2024) (quoting *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 n.13 (3d Cir. 2020)).

The second way a plaintiff may state a basis for municipal liability is by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* In this context, the plaintiff must allege that the inadequacy in the training actually caused the constitutional violation at issue. *City of Canton*, 489 U.S. at 388; *Carson*, 2024 WL 3792223, at *7. Usually, "a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of failure to train." *Thomas v. Cumberland County*, 749 F.3d 217, 223 (3d Cir. 2014) (citation omitted).

The Court previously concluded that Wagner did not identify a policy or custom that allegedly caused his injuries. *Wagner,* 2026 WL 789450, at *12. Although Wagner identified purported improper conduct by certain individual Defendants, he did not allege the City's failure to supervise, train, or discipline wrongdoers. *Id.* (first citing *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (holding that municipalities "are not vicariously liable under § 1983 for their employees' actions."); and then citing *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.")). He failed to allege facts from which it could be inferred that the City failed or inadequately trained its officers, or that the deficiency constituted deliberate indifference. *Id.* (first citing *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011)); and then citing *Carson*, 2024 WL 3792223, at *8 (dismissing supervisory liability claims where plaintiff pleaded no facts showing that police department "routinely failed to train its employees to refrain from perjury" where plaintiff alleged police gave false testimony at trial)). The Court therefore dismissed the claim.

As to the municipal liability claim in the Amended Complaint, the City once again argues that Wagner's *Monell* claim should be dismissed for failure to state a plausible claim. (ECF No. 49 at 11-12.) It maintains that Wagner "fails to plead even a single fact that would plausibly give rise to a *Monell* claim against the City." (*Id*. at 11.) While Wagner has attempted to flesh out his municipal liability claim in the Amended Complaint, his claim still falls far short of what is required to be plausible. Wagner asserts that the City failed to properly train and supervise detectives, did not discipline officers for misconduct, and tolerated "[w]itness coercion and fabrication practices" and "[s]ystemic Brady violations." (Am. Compl. at 3.) Yet, there are few facts provided in the Amended Complaint to support these conclusory allegations. For example,

no facts in the Amended Complaint relate to Wagner's asserted policy or custom that the City failed to discipline its officers. (*Id.*) Further, as Wagner has not plausibly alleged facts in the Amended Complaint that support the claims of misconduct by police, it is axiomatic that, without an underlying constitutional violation a plaintiff cannot establish a *Monell* violation on that basis. *Harris*, 110 F.4th at 198 (concluding that there must be an underlying constitutional violation for a municipality to be liable).

Wagner contends that Defendants in this case violated certain established practices including duties to disclose exculpatory evidence, and prohibitions on unconstitutional practices in case preparation and on sexual misconduct, but a *Monell* claim requires him to identify the specific policy or custom in place that caused his injuries and to plausibly plead its broader application beyond his own case. *Guzman v. City of Newark*, No. 20-6276, 2022 WL 1044957, at *9 (D.N.J. Apr. 7, 2022) (dismissing *Monell* claim where two instances of alleged wrongful initiation of criminal proceedings pleaded by plaintiff did not give rise to plausible claim of policy or custom). Wagner asserts that the City's practices "are consistent with patterns identified in James Dennis v. City of Philadelphia, demonstrating a widespread custom of constitutional violations." (*Id.*) But the invocation of one case prosecuted in 1992 and a broad reference to "a widespread custom of constitutional violations" does not suffice to allege a particular custom or practice by the City or a failure to supervise or train amounting to evidence of deliberate indifference here. Wagner needs to "credibly [tie] any potential custom or practice to a decisionmaker *through facts*." *Kauffman v. City of Philadelphia*, No. 25-6806, 2026 WL 1018331, at *5 (E.D. Pa. Apr. 14, 2026) (dismissing *Monell* claim where plaintiff "made conclusory statements which coincide with the elements of a *Monell* claim," and pointed to only

one case and vague allegations in support). The Motion to Dismiss will be granted on the *Monell* claim, and it will be dismissed without prejudice.

**E. Remaining Claims Against Nordo**

The Motion to Dismiss the Amended Complaint only addresses claims alleged against the City and Defendant Scally. Even though Defendant Nordo has not moved to dismiss claims, the Court may nonetheless dispense with the Fabrication of Evidence, Violation of *Brady*, and Failure to Intervene claims alleged against Nordo for the very same reasons it has dismissed those claims above. *See Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993) (stating that a court may also *sua sponte* dismiss claims against nonmoving defendants "where nonmoving defendants are in a position similar to that of a moving defendants [sic] or where the claims against all defendants are integrally related."). Accordingly, pursuant to its authority to dismiss claims under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court will dismiss the Fabrication of Evidence, Violation of *Brady*, and Failure to Intervene claims as alleged in the Amended Complaint against Nordo for failure to state a plausible claim.

Wagner lodges a separate count only against Nordo for Sexual Misconduct in violation of the Fourteenth Amendment. (Am. Compl. at 4.) Wagner states that "[o]n multiple occasions, Defendant Nordo engaged in sexual harassment and abuse of Plaintiff while acting under color of law," and this the conduct was "coercive and constituted an abuse of official authority." (*Id.* at 3.) Once again, Wagner's failure to plead any facts dooms his attempt to state a plausible claim.

Sexual abuse can violate a detainee's rights. *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018); *E. D. v. Sharkey*, 928 F.3d 299, 307 (3d Cir. 2019). A claim for sexual abuse is analyzed in the same manner as an excessive force claim. *Ricks*, 891 F.3d at 473-74. For a pretrial

detainee, a claim is analyzed using an objective-reasonableness standard; that is, whether "the force purposely or knowingly used against him was objectively unreasonable." *Jacobs*, 8 F.4th at 194 (quoting Graham, 490 U.S. 396-97); *Chin v. Warfel*, No. 23-4220, 2024 WL 665536, at *4 (E.D. Pa. Feb. 15, 2024) (considering a sexual abuse claim by pretrial detainee on statutory screening and assessing whether the prisoner has alleged "facts that plausibly show that the actions of the defendant were objectively unreasonable." (citation omitted)).

Although Wagner obliquely refers to "abuse," he never provides any factual details of the alleged incidents, such as the dates, circumstances, or actions of Nordo that were "objectively unreasonable." *Chin*, 2024 WL 665536, at *4. To the extent that Wagner claims that Nordo "engaged in sexual harassment," the claim would not be actionable as presented because "[v]erbal taunting and comments alone, even of a sexual nature, do not rise to the level of a constitutional violation." *Id.* (rejecting pretrial detainee's sexual abuse claim where correction officer allegedly made a derogatory remark about the size of his genitals); *King v. Quigely*, No. 18-3420, 2018 WL 4702168, at *3 (E.D. Pa. Sept. 28, 2018) (dismissing pre-trial detainee's sexual harassment claim because defendants' verbal abuse and sexual comments were not cognizable under the Fourteenth Amendment); *Brown v. Hamilton Police Dep't*, No. 13-260, 2013 WL 3189040, at *2 (D.N.J. June 21, 2013) ("Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner."), *aff'd sub nom. Brown v. Hamilton Twp Police Dep't Mercer Cnty., N.J.*, 547 F. App'x 96 (3d Cir. 2013)); *cf. Ricks*, 891 F.3d at 471 (deciding that an Eighth Amendment claim for sexual abuse or harassment requires a showing of physical contact with the alleged perpetrator). Wagner's bare and conclusory allegations against

Nordo in the Amended Complaint will thus be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court will permit him an additional opportunity to amend the claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will partially grant the City's and Scally's Motion to Dismiss the Amended Complaint insofar as the Court will dismiss the Fabrication of Evidence, *Brady* Violation, and Municipal Liability claims without prejudice for failure to state a claim. The Motion to Dismiss is also granted insofar as the Court will dismiss with prejudice the Failure to Intervene claim related to the alleged Fabrication of Evidence and Brady Violation claims. The Motion to Dismiss is denied to the extent it seeks dismissal of Fabrication of Evidence, *Brady* Violation, and Municipal Liability claims with prejudice.

The remainder of the Amended Complaint, including claims against Defendant Nordo and the Failure to Intervene claim based on sexual abuse, are dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Wagner will be given leave to file a second amended complaint if he is able to allege additional facts in support of claims dismissed without prejudice, *e.g.*, Fabrication of Evidence, *Brady* Violation, Failure to Intervene with alleged sexual assault, Municipal Liability, and Sexual Misconduct claims. An appropriate Order accompanies this Memorandum, which provides further guidance for proceeding.

**BY THE COURT:**

s/ Catherine Henry

**CATHERINE HENRY, J.**